**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


| | | |
|---|---|---|
| **TAMMY L. DECOSTA,** | ) | **CASE NO.1:04CV1118** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **MEDINA COUNTY, ET AL.,** | ) | <u>**OPINION AND ORDER**</u> |
| | ) | |
| **Defendant.** | ) | |

<u>**CHRISTOPHER A. BOYKO, J:**</u>

This matter is before the Court on Defendants' Medina County, Sheriff Neil F. Hassinger, Officer Melissa Smith, Officer Skoczen, Officer Dietrich, Officer Sue Jarvis, Lt. Baker, and First Sgt. Colonius Motion for Summary Judgment.  For the following reasons, the Court grants in part, and denies in part, Defendants' Motion for Summary Judgment.

<u>**FACTS**</u>

Plaintiff Tammy DeCosta filed this suit in United States District Court for violations of her federal constitutional rights and state law in connection with her alleged sexual abuse by a guard at the Medina County Jail while incarcerated.  Plaintiff was a pretrial detainee at the Medina County Jail from approximately April 14, 2003 to June 30, 2003.  During the course of

1

her incarceration, Plaintiff alleges she was subjected to unwanted sexual advances and sexual abuse, including rape, by Defendant Officer Hastings.  Plaintiff alleges other officers knew of, and conspired to facilitate, the sexual misconduct of Officer Hastings by allowing her into Plaintiff's housing unit when Officer Hastings was not assigned to that particular pod and observing Officer Hastings behavior and not reporting it.  Plaintiff alleges Officers Skoczen and Smith told her, "she might as well just accept it."  When she asked for help from Officer Dietrich she was told, 'it wouldn't do any good.  No one will listen or do anything about it."  Allegedly, even the jail chaplain, Officer Jarvis, failed to take any corrective action when told of Officer Hastings' conduct.  Plaintiff alleges First Sergeant Colonius knew or should have known of Officer Hastings inappropriate conduct toward Plaintiff, yet "he negligently, and with utter disregard and deliberate indifference, failed to perform his job to the detriment of Tammy DeCosta."

Plaintiff alleges Officer Hastings had previously engaged in inappropriate sexual acts with another inmate and therefore, the Medina County Sheriff's Department was negligent in its supervision of Hastings. After an investigation, Officer Hastings was fired from her position, due in part, to the determination that she engaged in inappropriate conduct with Plaintiff. It is undisputed that Plaintiff initially denied the alleged rape when questioned by investigators.

Plaintiff's Complaint alleges the following claims: Assault (Count I), Battery (Count II), violation of Plaintiff's Fourth, Eighth and Fourteenth Amendment rights and state law violations including assault and battery, sexual assault, gross sexual imposition, rape, stalking conspiracy and failure to supervise, train, monitor, observe, control and hire/retain employees under 42 U.S.C. §1983 (Count III), Defendants, acting under color of state law intentionally or with

2

deliberate indifference and callous disregard of Plaintiff's Fourth, Eighth and Fourteenth Amendment rights pursuant to official policy and custom, permitted, approved, ratified a pattern and practice of failing to train, supervise, control, investigate or discipline its officers and employees (Count IV), Plaintiff claims damages under 42 U.S.C. §1983 (Count V), Negligent Conduct (Count VI), Wanton and Reckless Conduct (Count VII), Dereliction of Duty under O.R.C. 2921.44 (Count VIII), Intentional Infliction of Emotional Distress (Count IX), Negligent Infliction of Emotional Distress (Count X), Negligent Hiring (Count XI), Conspiracy (Count XII) and Notice of Additional Claims(Count XIII).  Each of the individually named Defendants are being sued in their official and individual capacities.

In addition to their claims against individual sheriff's department personnel, Plaintiff has named the Medina County Sheriff's Department as a defendant.  A sheriff's department is not *sui juris,* therefore, Plaintiffs cannot assert such claims. *See e.g., Radvansky v. City of Olmsted Falls,* 395 F.3d 291, 301 (6th Cir.2005).

## STANDARD OF REVIEW

In accordance with Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact.

3

*Celotex*, 477 U.S. at 323.  A fact is material only if its resolution might affect the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party pursuant to Federal Rule of Civil Procedure 56(e), which provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

In ruling upon the motion, the court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995); *United States v. Hodges X-Ray, Inc.*, 759 F.2d 557, 562 (6th Cir. 1985).  However, summary judgment should be granted if the party bearing the burden of proof at trial does not establish an essential element of its case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. 317).  The Court has no "duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989).  "[T]he nonmoving party has an affirmative duty to direct the court's attention to specific evidence upon which it seeks to rely." *Davis v. City of East Cleveland,* 2006 WL 753129 (N.D. Ohio March 22, 2006) citing, *Al-Qudhai'een v. America West Airlines, Inc.,* 267 F.Supp.2d 841, 845 (S.D.Ohio 2003) *citing In re Morris,* 260 F.3d 654, 665 (6th Cir.2001). The lack of such a response by the

nonmoving party may result in an automatic grant of summary judgment. *See Reeves v. Fox Television Network,* 983 F.Supp. 703, 709 (N.D.Ohio 1997). This Court will not consider evidence not expressly referred to by counsel in their briefs on summary judgment in ruling on the motions for summary judgment nor did this Court consider unauthenticated materials in reaching its conclusions. Also, Defendants argue against the use of Plaintiff's expert report as it has not had a *Daubert* hearing. However, the record does not reflect a motion by Defendants challenging the Plaintiff's report or requesting a *Daubert* hearing,, therefore, the Court finds that no *Daubert* challenge has been made.

### Defendants Argue

Defendants' argument is simple and straightforward. Defendants had no knowledge of the conduct between Officer Hastings and Plaintiff until another inmate reported it. Once they became aware of the situation, Officer Hastings was removed from contact with female prisoners and, after a subsequent investigation, was terminated from her position with the Medina County Sheriff's Department.

As a threshold issue, Defendants contend Plaintiff has abandoned her state law claims, as Plaintiff's Brief in Opposition does not even mention her state law claims and does not oppose summary judgment on any of them. Therefore, as no discussion of the relevant state claims with supporting evidence of the elements exists, the Court grants summary judgment on all state claims. Even if Plaintiff has arguably not abandoned these claims, Counts I and II (Assault and Battery) do not apply to Defendants, as there is no allegation anyone other than Hastings committed the sexual assaults on Plaintiff.

Summary judgment for Defendants is granted on Count V as this claim is redundant of

5

Counts III and IV. Summary Judgment is granted for Defendants on Count VII (Wanton and Reckless Conduct), as "wanton and reckless conduct is technically not a separate cause of action but a level of intent which negates certain defenses which might be available in an ordinary negligence action." *Cincinnati Ins. Co. v. Oancea,* 6th Dist. No. L-04-1050, 2004 WL 1810347, at ¶ 17 (Ohio App. August 13, 2004), citing *Prosser & Keeton on Torts,* (5 Ed.1984), 212-214.

Summary Judgment is granted for Defendants on Count VIII (Dereliction of Duty pursuant to O.R.C. 2921.44), as this is a criminal statute and does not establish civil liability. *Stoyer v. Summit County Executive*, 38 Ohio App.3d 171, 173 (1988).

Summary judgment for Defendants is granted on Count X (Negligent Infliction of Emotional Distress) as "a claim of negligent infliction of emotional distress is limited to instances where the plaintiff has either witnessed or experienced a dangerous accident or appreciated the actual physical peril." *Bunger v. Lawson Co.,* 82 Ohio St.3d 463, 466 (1998). The facts as alleged in Plaintiff's Complaint do not involve a dangerous accident.

Summary Judgment for Defendants is granted on Plaintiff's §1983 claims insofar as they are based on state law violations. "To survive summary judgment in a §1983 action, Plaintiff must demonstrate a genuine issue of material fact as to the following 'two elements: 1) the deprivation of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law.'" *Johnson v. Karnes,* 398 F.3d 868, 873 (6th Cir. 2005) quoting *Ellison v. Garbarino,* 48 F.3d 192, 194 (6th Cir.1995).

Summary judgment for Defendants is granted on Count IX (Intentional Infliction of Emotional Distress). As the record is devoid of any corroborating evidence of severe emotional distress, (i.e. medical records, expert testimony, additional testimony from others as to the effect

on Plaintiff) to support her intentional infliction of emotional distress Defendants are entitled to summary judgment.  See *Powell v. Grant Med. Ctr.,* 148 Ohio App.3d 1,6 (2002).

Summary Judgment for Defendants on Count VI (Negligent Conduct) and Count XI (Negligent Hiring and Retention) is appropriate as Defendants allege O.R.C. 2744 confers immunity on political subdivisions for injuries that occur as a result of any act or omission of the political subdivision or an employee in connection with a proprietary or governmental function. Again, Plaintiff's Brief in Opposition fails to discuss, mention, argue or offer a defense of these claims.   Plaintiff fails to rebut the immunity arguments and has failed to demonstrate why Medina County and its officers are not entitled to statutory immunity under R.C. 2744. Therefore, summary judgment for Defendants is granted.

There is no discussion by Plaintiff of her conspiracy claims, the elements of it or defense of it in her Brief in Opposition to Summary Judgment.  She does allege Officers Smith and Skoczen facilitated Plaintiff's activities by allowing her access to Plaintiff and not reporting Complaints by Plaintiff.  However, the Court finds no evidence of the required agreement of parties to inflict a wrong.  Absent such evidence, the court grants summary judgment for Defendants.

### Plaintff's §1983 Claims Count III

**II.  42 U.S.C. § 1983**

Section 1983 provides a civil cause of action against any person who, under color of state law, deprives a citizen of "any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.  To succeed on a claim under § 1983, a plaintiff must demonstrate two elements:  1) that he was deprived of a right secured by the Constitution or laws of the United

States, and 2) that the deprivation was caused by a person acting under color of state law. *Redding v. St. Edward*, 241 F.3d 530, 532 (6th Cir. 2001).

However, even if a plaintiff proves these two elements, a defendant officer sued in his individual capacity may raise the affirmative defense of qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982).  Qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable official would have known. *Id.* at 818

Count III alleges §1983 violations of federal constitutional rights and state law.  As discussed earlier, any §1983 actions for violations of state law should be dismissed as not properly brought under §1983 (only federal law and constitutional violations are properly brought under §1983).  Plaintiff's Complaint alleges Defendants failed to train, supervise, monitor, observe, control and hire/retain employees and intentionally and with deliberate indifference and callous disregard deprived her of her rights under the Fourth, Eighth and Fourteenth Amendments.  Therefore, Plaintiff claims Defendants are individually liable to Plaintiff.

As the evidence and Plaintiff's Brief in Opposition do not support a finding that an unlawful search of seizure occurred and as the activities alleged occurred while Plaintiff was incarcerated and, as Plaintiff was a pretrial detainee when the events occurred, no Fourth Amendment claim exists and summary judgment is appropriate for Defendants.

This Court found, in  Defendant Hastings's Motion for Summary Judgment on Plaintiff's §1983 action for violation of her Eighth Amendment right to be free from cruel and unusual

8

punishment, that a constitutional violation occurred.  In *Jackson v. Madery,* 2005 U.S. App. Lexis 24684 (6th Cir. Nov. 17, 2005), the Sixth Circuit, in an unreported opinion, held that a prison guards' rubbing and grabbing Plaintiff's buttocks in a degrading and humiliating manner during a shakedown" did not constitute a constitutional violation.  Plaintiff's Complaint alleges violations of her Fourth, Eighth and Fourteenth Amendment rights.  The Eighth Amendment's prohibition against cruel and unusual punishment is applicable only to those convicted of crimes and do not apply to pretrial detainees.  *Bell v. Wolfish,* 441 U.S. 520, 535 n.16 (1979).  The Eighth Amendments rights, are conferred upon pretrial detainees through the Fourteenth Amendment's Due Process clause and are analyzed under the Eighth Amendment.  *Whitley v. Albers* 475 U.S. 312, 327 (1986), *Thompson v. County of Medina* 29 F.3d 238, 242 (6th Cir. 1994).   Therefore, the Court finds Plaintiff's claims are properly brought under the Fourteenth Amendment.

More importantly, Plaintiff offers no case law to support her proposition that rape by a prison guard constitutes a constitutional violation by the guard committing the act.  However, in *Jackson,* the Sixth Circuit, cited the Second Circuit case of *Boddie v. Schneider,* 105 F.3d 857, 860-61, (2nd Cir. 1997), which held "severe or repetitive sexual abuse of an inmate by a prison officer can be objectively, sufficiently serious enough to constitute an Eighth Amendment violation."  In *Pelfrey v. Chambers,* 43 F.3d 1034 (1995), the Sixth Circuit found that unprovoked assaults by prison guards, even if unauthorized, state a claim under 42 U.S.C. §1983.  The Court held isolated and unauthorized acts may violate the Eighth Amendment's prohibition against cruel and unusual punishment.  There is a conflict on this issue among the circuits and Judge Batchelder dissented in the *Pelfrey* decision on whether unauthorized attacks

9

by prison guards constitute "punishment" prohibited by the Eighth Amendment.  In *Pelfrey,* a prisoner sued prison guards for Eighth Amendment violations for cutting his hair with a knife, against his will.  Judge Batchelder cited to Fifth and Second Circuit cases holding that isolated and unauthorized assaults by prison guards do not constitute cruel and unusual punishment under the Eighth Amendment.  This Court  finds, pursuant to *Jackson and Pelfrey*, Plaintiff has stated a cognizable claim under 42 U.S.C. §1983 for violation of her Fourteenth Amendment rights.  She alleges in affidavit that she was raped by Defendant Hastings and that Hastings sexual advances and inappropriate actions were not isolated but repeated.

Plaintiff alleges she told  Officers Skoczen, Smith, Dietrich and Jarvis of the alleged harassment and sexual misconduct by Hastings and asked them to stop Officer Hastings.  Each Defendant allegedly expressly stated nothing could be done.  Defendants deny any foreknowledge of the alleged misconduct of Officer Hastings.

In order to prevail on a §1983 action for failure to protect an inmate, Plaintiff must demonstrate that the official was deliberately indifferent to a substantial risk of harm to the inmate.  *Farmer v. Brennan,* 511 U.S. 825, 828 (1994).  In *Durham v. Nu'Man,* 97 F.3d 862, 867 (6th Cir. 1997) the Sixth Circuit held that officer's have a duty to protect inmates from assaults by other officers.  In this case, it is a genuine issue of fact whether Officers Smith, Skoczen, Dietrich and Jarvis exhibited deliberate indifference to Plaintiff's plight.  Therefore, summary judgment for officers Dietrich, Skoczen, Smith and Jarvis is denied.

In *Farmer,* at 834-838, the U.S. Supreme Court analyzed the Eighth Amendment duties owed prisoners by officials.  "In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive

physical force against prisoners." See *Hudson v. McMillian,* 503 U.S. 1, (1992). "The Amendment also imposes duties on these officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates,'" *quoting Hudson v. Palmer,* 468 U.S. 517, 526-527, (1984).

"Our cases have held that a prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, "sufficiently serious," *Wilson v. Seiter* 501 U.S. 294, 298 (1991),; see also *Hudson v. McMillian, supra,* 503 U.S., at 5; a prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities," *Rhodes v. Chapman,* 452 U.S. 337,347 (1981).  For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. See *Helling v. McKinney,* 509 U.S. 25, 35, (1993).

The second requirement follows from the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Wilson,* 501 U.S., at 297. To violate the Cruel and Unusual Punishments Clause, a prison official must have a "sufficiently culpable state of mind." *Ibid.;* see also *id.,* at 302-303, *Hudson v. McMillian, supra,* 503 U.S., at 8.  In prison-conditions cases that state of mind is one of "deliberate indifference" to inmate health or safety, *Wilson, supra,* 501 U.S., at 302-303. "We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  "But an official's

11

failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."

In *Curry v. Scott,* 249 F.3d 493, 506 (6th Cir. 2001) the Sixth Circuit held, "prison officials are held liable for exposing prisoners to excessive force at the hands of prison employees under the same "deliberate indifference"standard that *Farmer v. Brennan* employs for prison officials who fail to protect inmates from violence by others."  The deprivation must be sufficiently serious and the prison official must "know of and disregard an excessive risk to inmate health and safety" Furthermore, in *Combs v. Wilkinson,* 315 F.3d 548, 558 (6th Cir. 2002) the Sixth Circuit held, "a supervisory official may not be held liable under §1983 for the misconduct of those the official supervises unless plaintiff demonstrates that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a plaintiff must show that the official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending officers."

The evidence presented does not support a finding that the supervising officers "implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending officer/officers."

Following this structure for analyzing the Plaintiff's claims against Defendant supervisory officials, the Court finds that there is no evidence showing Defendants Medina County, Sheriff Hassinger, Lieutenant Baker and First Sergeant Colonius were aware of the facts of Hastings conduct towards Plaintiff, nor is there evidence they inferred an unreasonable risk of harm to the safety of Plaintiff.  Plaintiff's brief expressly states, "the DeCosta/Hastings situation came to Medina County Sheriff Department supervisors and administrators attention only when

inmate Sandra Thomas filed a written complaint.  A review of Thomas' letter shows it was dated June 18, 2003.  Plaintiff's affidavit alleges the rape occurred on or after June 18, 2003.   The investigation of Officer Hastings began on June 24, 2003 and she was immediately prohibited from working in the female pod until her subsequent termination.  Importantly, Plaintiff denied any sexual conduct between her and Officer Hastings when questioned by jail investigators.  Absent any evidence of knowledge by the supervising officials, the Court finds that Plaintiff has failed to meet her burden against the supervising officers for the misconduct of officers beneath them.  In addition, the Dawn Duff allegations of sexual misconduct on the part of Hastings came to light some two years after her incarceration at Medina County and was only reported to Medina County officials after Hastings' alleged misconduct with Plaintiff was under investigation. In fact, there is no evidence that the Medina County officials or the supervising officers had any foreknowledge of improper sexual conduct by Officer Hastings that would even permit an inference of deliberate indifference to the plaintiff's safety.

### **PLAINTIFF'S MONELL CLAIMS COUNT IV**

### **Policy and Custom**

Plaintiff's Complaint at Count IV alleges Defendants Medina County Sheriff's Department, Sheriff Neil Hassinger, First Sergeant Colonius, Lieutentant Baker and various Jane and John Doe officers acting pursuant to policy or custom, intentionally, or with deliberate indifference encouraged, tolerated, permitted, ratified, tacitly or expressly, pattern or practice of failing to supervise, train or retrain, control, investigate and or discipline its officers and employees resulting in the violation of Plaintiff's constitutional rights.  These defendants knew or should have known that the wrongs committed against Plaintiff were occurring.  The failure of

13

these Defendants to act amounts to an official policy or custom of inaction.  These acts or omissions were the moving force in Plaintiff being abused and assaulted.

"The Due Process Clause of its own force requires that conditions of confinement satisfy certain minimal standards for pretrial detainees." *Collins v. City of Harker Heights, Tex.,* 503 U.S. 115 (1992), citing *Bell v. Wolfish,* 441 U.S. 520, 535, n. 16, 545, (1979).  When a custodial relationship exists between the state and tortfeasor or alleged victim a duty of care and safety may arise.  *Id.* at 127.  When Plaintiff alleges violations of her constitutional rights by a municipality under §1983, the Court must examine two issues.  First, whether Plaintiff's harm was the result of a constitutional violation.  Second, if a constitutional violation occurred was the municipality responsible for that violation." *Collins*, at 120.  Here the Court has determined that a constitutional violation has occurred, therefore, the Court must proceed to the second step of the analysis; the municipality's responsibility for the constitutional violation.

"[I]t's not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of the County Comm'rs v. Brown,* 520 U.S. 397, 404 (1997), *Monell v. New York City Dep't of Soc. Servs.* 436 U.S. 658, 691 (1978).  Plaintiff must "show that the unconstitutional policy or custom existed, that the policy or custom was connected to the county, and that the policy or custom caused his constitutional violation.  *Napier v. Madison County, Ky.,* 238 F.3d 739, 743 (6th Cir. 2001).  A county may not be liable under §1983 strictly because it employed an alleged

tortfeasor as  there is no respondeat superior liability in §1983 suits.  *Brown,* at 403.  "It is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible."  *Monell*, at 694.

"Under appropriate circumstances, even a single act or decision may qualify as an official government policy, though it be unprecedented and unrepeated." *Holloway v. Brush,* 220 F.3d 767,778 (6th Cir. 2000).   "Proof of the incident [must] include proof that it was caused by an existing unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.  Otherwise, the existence of an unconstitutional policy, and its origin must be separately proved."  *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823-24 (1985).  When a non-policymaking employee acts contrary to the policies of the municipality the municipality is not liable for the employees conduct.  *Turner v. City of Taylor,* 412 F.3d 629, 646 (6th Cir. 2005).  There may be municipal liability for the unconstitutional decisions of its non-policy making employees if it ratifies those decisions.  *City of St. Louis v. Praprotnik,* 485 U.S. 112, 127 (1988).  Mere acquiescence in a single discretionary decision is not sufficient to show ratification. *Id.* If a  policymaking authority issues a final decision affirming a subordinate's decision on the merits or otherwise, it does thereby ratify the decision and adopt it as municipal policy. " More importantly, where action is directed by those who establish governmental policy, the municipality is equally responsible whether the action is to be taken only once or to be taken repeatedly. To deny compensation to the victim would therefore be contrary to the fundamental purpose of § 1983." *Meyers v. City of Cincinnati,* 14 F.3d 1115, 1118 (6th Cir. 1994).

Plaintiff has failed to offer evidence that a particular custom or policy of Medina County

was the moving force behind the violation of Plaintiff's constitutional rights when she was allegedly assaulted by Officer Hastings.  The record, including Plaintiff's own Brief in Opposition, repeatedly states Defendant Hastings' actions violated the policy and procedures of Medina County jail.  There is no evidence of an unconstitutional policy or custom at the Medina County jail.  Here, the alleged rape of Plaintiff did not occur because of some constitutional violation by Medina County, but through the acts of Hastings, possibly facilitated by additional, non-policymaking employees.

Plaintiff's brief contends that Medina County is liable because it failed to adequately supervise and monitor its employees after it knew of serious violations of its policy and procedures due to two previous incidences of sexual contact between inmates and guards.  In 2001, inmate Dawn Duff was allegedly sexually assaulted by Defendant Hastings in much the same manner as Plaintiff.  In 2002, Officer Lester McNary engaged in a sexual relationship with an inmate.  Also, Plaintiff contends, Officer Hastings engaged in numerous violations of Medina County Jail policies and procedures for which she received little, if any, punishment.  Finally, supervising officials were unaware of many of Defendant Hastings violations until well after they occurred.

These allegations, though troubling, do not rise to the level of deliberate indifference sufficient to impute liability on Medina County for the unconstitutional unauthorized acts of their employees. The record does not indicate that Dawn Duff ever reported any inappropriate sexual activity on the part of Hastings until 2003.  The record indicates that Dawn Duff complained that Officer Hastings jumped out at her from inside her jail cell.  There is no allegation that any sexual misconduct occurred at this time.  Therefore, Medina County officials

16

and supervising officers would not have been aware of any unconstitutional action by Hastings in 2001.  Her behavior, though clearly unprofessional, bizarre and in apparent violation of the policies and procedures of the Medina County jail, does not constitute a constitutional violation.

Officer McNary's sexual relationship with an inmate resulted in his criminal prosecution and imprisonment, additional cameras installed in the jail and the assignment of female officers to guard female inmates.  There is no allegation or evidence that his sexual relationship, albeit improper, constituted a rape or sexual assault to establish a pattern or practice of such behavior that would put the Medina County officials on notice or would permit the inference of deliberate indifference to the safety of inmates.

Hastings' numerous write-ups and verbal reprimands were for activities in no way implicating a danger to the safety of inmates.  None involved allegations of rape or sexual abuse.

Finally, the fact that prisoner complaints may not have made it up to supervisors does not implicate an unconstitutional policy or procedure, but rather, as Plaintiff's brief states, a *violation* of the Medina County policies and procedures.  Therefore, the Court grants summary judgment for Defendants on Plaintiff's claim for municipal liability for unconstitutional policies and customs.

### 1983 Failure to Train

Failure to adequately train police officers may state a cause of action, under §1983, for municipal liability, "We hold today that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris,* 489 U.S. 378, 388

17

(1989).  A finding of deliberate indifference in failure to train cases can be justified in at least two types of cases, 1) failure to provide adequate training in light of forseeable consequences that could result from a lack of instruction; and 2) the city's failure to act in response to repeated complaints of constitutional violations by its officers. *Brown v. Shaner,* 172 F.3d 927, 931 (6th Cir. 1999).  In at least one case, the court held officers who completed the state course and were trained for two months by sergeants, were not inadequately trained.  *Fisher v. Harden,* 398 F.3d 837, 849 (6th Cir. 2005).  Also, in *Fisher*, when Plaintiff failed to demonstrate that the county knew of misconduct by its employees and failed to respond, the plaintiff had not shown deliberate indifference.  In *St. John v. Hickey,* 411 F.3d 762, 776 (6th Cir. 2005), the court held where plaintiff failed to produce evidence that the sheriff ignored a pattern of constitutional violations "plaintiff's official capacity claims failed on summary judgment."

Again, the evidence does not support a finding that the policymakers engaged in any practice or that the Medina County Sheriff's Department training was inadequate so as to justify a finding of a constitutional violation.  Plaintiff has pointed to no training manual or lack of appropriate instruction at the Medina County facility.  There is no testimony that training was inadequate.  Plaintiff's argument amounts to *res ipsa loquitor.*   The harm occurred, therefore, the training was inadequate.  Plaintiff hangs her hat on the failure of prisoner complaints to make it up the chain of command, however, none of the complaints, even if they had made it up the chain of command, would have put the Medina officials on notice that it was forseeable a rape by a prison guard was likely to occur.  Nor did the failure to report demonstrate that the supervising officials deliberately ignored a pattern of unconstitutional behavior.  Therefore, summary judgment for Defendants on Plaintiff's claims for failure to train under §1983 is

18

granted.

## Unconstitutional Custom or Practice

An act performed pursuant to a custom that has not been formally approved by an appropriate decision-maker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Gregory v. Shelby County, Tenn.* 220 F.3d 433, 441-42 (6th Cir. 2000). "[A] custom must be so permanent and well settled as to constitute a custom or usage with the force of law". *Feliciano v. City of Cleveland,* 988 F.2d 649, 655 (6th Cir. 1993).  Plaintiff's must present evidence outside the facts of her own case to show the possibility of a pattern. *Thomas v. City of Chattanooga,* 398 F.3d 426, 433-34 (6th Cir. 2005).

The record is devoid of evidence that a particular custom adopted by the Medina County jail caused the sexual abuse and rape of Plaintiff as previously discussed.  Therefore, summary judgment for Defendants on Count IV of Plaintiff's Complaint is granted.

## Failure to Screen in Hiring

Plaintiff alleges the County is liable for hiring Officer Hastings in spite of a negative review by the interviewing officer.  Plaintiff has produced no evidence that the negative review involved any documentation showing Officer Hastings was likely to commit the constitutional violations alleged in the Complaint.

## Qualified Immunity

Defendants have asserted the affirmative defense of qualified immunity, which can protect state officials sued in their individual capacity against liability for civil damage arising from a § 1983 action.   Qualified immunity analysis involves a two-step inquiry. *Saucier v. Katz,*

19

533 U.S. 194, 200 (2001).  First, the court must determine whether the facts viewed in the light most favorable to plaintiff show that a constitutional violation has occurred.  *See id.* at 201. Second, if the court finds a violation, it then must determine whether the violation involved clearly established constitutional rights of which a reasonable person would have known.  *See Id.* at 201-02.  Only if the answer to both questions is "yes," may an official's defense of qualified immunity be denied.  *See Id.* at 202.

### 1.  Constitutional violations

Here, upon accepting the Plaintiff's version of the facts, the Court finds that  a reasonable jury may conclude that Defendants Smith, Skoczen, Dietrich and Jarvis' actions violated Plaintiff's Fourteenth Amendment rights.

### 2.  Clearly established rights

Having found that there is a genuine issue of material fact whether Defendants  violated Plaintiff's Fourteenth Amendment rights, the Court then must determine whether the law surrounding those rights were clearly established at the time of the incident in April-June, 2003. In this analysis, those rights must have been "'clearly established' in a more particularized, and hence more relevant, sense.  "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

To determine whether a constitutional right is "clearly established," the Court must look first to decisions of the Supreme Court, then to decisions of the Sixth Circuit and other courts within the circuit, and then to decisions of other circuits.  *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).  For Plaintiff's rights to be "clearly established," the Court does not have to

20

find a case that has held Defendants specific actions to be unlawful, but it must determine that

the relevant cases are factually close enough to have made the unlawfulness apparent.  *See*

*Anderson*, 483 U.S. at 640.

Having determined that Defendants owed Plaintiff a duty to protect her from harm (i.e.

rape and sexual abuse) from other officers, the court finds that Plaintiff's right was clearly

established at the time of the incidences in question.  Therefore, qualified immunity does not

exist for Defendants Smith, Skoczen, Dietrich and Jarvis.

Therefore, Summary Judgment is granted for all Defendants on Counts I, II, IV, V, VI,

VII, VIII, IX, X, XI, XII, and XIII.  Summary Judgment is granted for Defendants Hassinger,

Colonius, Baker and Medina County on all Counts.  Summary Judgment is denied for

Defendants Smith, Skoczen, Dietrich and Jarvis on Count III  failure to protect.

IT IS SO ORDERED.


May 24, 2006                                       s/ Christopher A. Boyko
Date                                               CHRISTOPHER A. BOYKO
                                                   United States District Judge
                                                   Original Signature on file

21